*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-029

JUNE TERM, 2015

In re D.S., Juvenile            }    APPEALED FROM:
}
                                       }    Superior Court, Caledonia Unit,
                                       }    Family Division
}
                                       }    DOCKET NO. 19-3-14 Cajv

                                         Trial Judge: Howard A. Kalfus,
                                                               Acting Superior Court Judge

In the above-entitled cause, the Clerk will enter:

Mother and father appeal the court's adjudication of their son D.S., born in March 2014, as a child in need of care or supervision (CHINS). On appeal, mother argues that the decision is void because the family court lacked jurisdiction at the commencement of the proceeding, and that the adjudication was unsupported because it was based on pre-birth circumstances. Father joins mother's arguments, and also argues that the court erred in relying on evidence related to D.S.'s siblings in its decision. We affirm.

There is a lengthy history of involvement by the Department for Children and Families (DCF) with parents and their children. D.S. is mother's sixth child. She voluntarily relinquished parental rights to her oldest child. The remaining four children, three of whom are biologically father's, were also removed from parents' care, and parents stipulated that they were CHINS for lack of proper parental care. Some of the issues prompting the involvement of DCF have been chronic filth in the home, parents' substance abuse and mental-health issues, and the children's truancy and poor hygiene. Father has also had anger-management issues. During her pregnancy with D.S. mother was on Subutex to control her opiate addiction and was regularly using marijuana. Prior to D.S.'s birth, a CHINS petition was filed based on the pattern of neglect of D.S.'s older siblings. Following a hearing that was combined with the termination hearing for the older children,[1] the court found that parents' history of inadequate parenting and lack of progress on addressing those identified issues demonstrated that D.S. was CHINS for lack of proper parental care. Both parents filed timely notices of appeal.

On appeal, parents first argue that the court lacked jurisdiction over the child-neglect proceeding because it was filed prior to D.S.'s birth. The State filed a CHINS petition on March 19, 2014. On March 21, 2014, the court issued an order transferring legal custody of "unborn baby S" to DCF. D.S. was born on March 24, 2014. Following a temporary care hearing on March 26, the court issued a temporary-care order finding that D.S. was without proper parental care and transferring custody to DCF.

---

[1] The court terminated parents' rights to the four children, and parents' appeal of that order is pending at this Court. In re L.W., D.M.S., R.S., & A.S., Docket No. 15-028.

Parents contend that because the CHINS petition was filed prior to D.S.'s birth, the court lacked subject-matter jurisdiction under the Juvenile Proceedings Act (JPA) and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and authority to adjudicate D.S. as CHINS under the juvenile-protection act. Mother asserts that the plain language of both the UCCJEA and the juvenile-protection act limit the court's jurisdiction to deciding custody matters involving a "child," and that a child does not include an unborn fetus. See 15 V.S.A. § 1061(2) (UCCJEA definition of child); 33 V.S.A. § 5102(2) (including in definition of "child" in juvenile-protection act "an individual").

We need not decide whether parents waived this challenge.[2] Any error by the trial court in issuing the March 21, 2014 order prior to the child's birth was essentially mooted by the child's birth and the court's subsequent orders, and any error in failing to require the State to refile its CHINS petition on or after March 24 was harmless in this case.[3] This Court has twice before considered the same argument—that the family court lacked subject-matter jurisdiction because the CHINS petition was filed and a detention order was issued before the child's birth. In In re N.H, we explained that "[c]ommencement of a CHINS proceeding prior to a child's birth does not necessarily deprive the family court of subject matter jurisdiction." 2005 VT 118, ¶ 6, 179 Vt. 537 (mem.). We concluded that any error was harmless in that case because after the infant's birth, the court issued a detention order, and the merits and disposition hearings occurred after birth. Id.; accord In re J.M., 170 Vt. 587, 588-89 (2000) (mem.). We reach the same conclusion here. Whatever infirmity may have been present at the time the petition was initially filed was no longer present when the court issued the emergency-detention order on March 25, 2014, after D.S.'s birth, or by the time of the hearing on the merits and the issuance of the CHINS order. To invalidate those proceedings now would serve neither the purposes of the JPA and UCCJEA nor the best interests of the child. See In re N.H., 2005 VT 118, ¶ 7 (explaining that neither the purposes of the UCCJA nor best interests of child "would be served by remanding the matter for further pro forma proceedings.").

Parents next argue that the CHINS determination was improperly based exclusively on pre-birth circumstances. Amicus curiae, in a brief filed in support of parents, argues that it is unconstitutional and contrary to the interests of public health to expand child-welfare law by allowing state intervention based on a pregnant woman's use of drugs, particularly those used to treat opioid dependence.

We need not reach the argument presented by mother and amicus that the court erred in relying on mother's prenatal use of marijuana and a prescribed opioid because the court's decision in this case did not rest on mother's drug use during her pregnancy. Although the court recounted that mother has a long history of drug use "including opioids and marijuana," this did not form the basis for the court's decision. Rather, the court based its CHINS adjudication on parents' "history of inadequate parenting" and the unresolved issues that resulted in parents' older children being taken into DCF custody, including unsafe levels of filth in the home, poor

_____

[2] The child's attorney filed a motion to dismiss the CHINS petition because the child was not yet born, but withdrew the motion at the beginning of the temporary care hearing on March 26, following the child's birth, on the ground that the motion was moot. In the context of that conversation, no party raised any objection to the court's authority to act prospectively.

[3] We do not reach the question of whether the trial court's March 21 order exceeded the court's statutory authority.

2

hygiene exposing the children to ridicule in school, the children being inadequately fed, and truancy issues.

Parents also contend that because the juvenile-protection statute defines CHINS in the present tense—as a child who "is without proper parental care . . . necessary for his or her well-being," 33 V.S.A. § 5102(3)(B)—the evidence must demonstrate a present inability of parents to provide care. Therefore, according to parents, pre-birth circumstances cannot form the basis for a CHINS adjudication and the historical evidence in this case concerning parents' care of their older children was not sufficient to demonstrate parents' inability to care for D.S.

Parents' argument that a CHINS determination may not be based "solely on pre-birth circumstances" is contrary to well-settled law. The State "[does] not need to establish actual harm" to support a CHINS adjudication. In re L.M., 2014 VT 17, ¶ 29, 195 Vt. 637; see E.J.R. v. Young, 162 Vt. 219, 223 (1994) (explaining that CHINS determination is not dependent on "[a]ctual and completed harmful acts"). A CHINS proceeding is protective in nature and the focus at the merits stage is on the welfare of the child. In re J.F., 2006 VT 45, ¶ 9, 180 Vt. 583 (mem.). For this reason, the court need not wait for an infant to be actually harmed before seeking to have the child declared CHINS, but may rely on evidence of the parents' treatment of siblings. See E.J.R., 162 Vt. at 224 (explaining that evidence of treatment of siblings is relevant). Therefore, the court did not err in considering pre-birth evidence.

Father argues that the court erred in relying on evidence related to D.S.'s siblings in this case because the State failed to demonstrate that the evidence was relevant to D.S. It is up to the family court to "determine on the facts of each case whether the treatment of siblings is probative of neglect or abuse of a juvenile under the court's consideration." In re K.B., 154 Vt. 647, 647 (1990) (mem.). On appeal from a CHINS adjudication, this Court will uphold the family court's factual findings unless clearly erroneous and its legal conclusions if supported by the findings. In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508.

The court found that parents have a seven-year history of inadequate parenting, which resulted in CHINS petitions being filed three times with respect to some or all of D.S.'s older siblings. The issues requiring DCF involvement included chronic filth in the home, which created safety and health risks; inadequate hygiene of the children; serious hunger issues with the children; and parents' inability to meet the children's educational needs. In addition, mother has mental-health issues, which impacted her ability to parent, and father has anger-management issues. During the time of DCF involvement, including the time immediately preceding D.S.'s birth, parents failed to make process on addressing these issues. No progress was made during family-time coaching due to parents' inconsistent attendance and parents' distrust of DCF and school officials.

Father argues that evidence related to D.S.'s siblings was not relevant to this proceeding because it concerned parents' inability to care for the children all at once, was outdated information about the condition of the home, and was related to school issues and therefore not relevant to D.S. There was no error. Although the evidence related to all of the older children, the lack of a clean and safe home and adequate parenting skills would impact a newborn child just as much as a group of children. Further, the evidence was sufficiently current. The CHINS petition pertaining to the older children was filed in October 2013, just five months before D.S.'s

3

birth,[4] and the court found that parents had failed to make progress since the filing of that petition. Finally, although the children's lack of hygiene and hunger issues were noticed when the children went to school, the unsafe and dirty condition of the home affected the safety and health of all the children, not just those who were school age. For these reasons, the court did not err in concluding that the evidence demonstrated a consistent pattern of neglect and lack of progress in addressing insufficient parenting skills, and that these facts were relevant to the CHINS petition pertaining to D.S. See In re J.J.P., 168 Vt. 143, 148 (1998) (concluding that mother's neglect of her first seven children "established a pattern of abuse and neglect relevant to her ability to properly care for" child in current neglect proceeding).

Finally, mother contends that DCF could have employed alternative means to protect D.S.'s welfare without taking custody, particularly by placing D.S. in her care under a conditional custody order. Mother argues that DCF's failure to do so deprived her of a fundamental right. We decline to reach this argument because the placement decision is not on appeal. D.S. was placed in DCF custody pursuant to a temporary-care order, which issued on March 26, 2015. See 33 V.S.A. § 5308. That temporary order is not currently on appeal. The decision on appeal is the merits decision adjudicating D.S. as CHINS. That order did not decide placement, which will be determined at the disposition phase. See id. § 5318.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice

---

[4] In January 2015, parents stipulated that the older children were CHINS for lack of proper parental care.

4